UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJAY KUMAR DEV, | No. 2:18-cv-1972 AC P |
| Petitioner, | |
| v. | <u>ORDER</u> and |
| JOE LIZARRAGA, Warden, | FINDINGS AND RECOMMENDATIONS |
| Respondent. | |

I. <u>Introduction</u>

Petitioner, a state prisoner proceeding with counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, together with a motion to stay and abey this action pursuant to <u>Rhines v. Weber</u>, 544 U.S. 269 (2005). Petitioner paid the filing fee. This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the following reasons, the undersigned recommends that petitioner's motion for a stay be granted.

II. <u>Background & Statute of Limitations</u>

In 2009, petitioner was convicted in Yolo County Superior Court of sex crimes against his adopted daughter, and sentenced to over 378 years in prison. The Third District California Court of Appeal affirmed the judgment by written order filed January 12, 2017. See <u>People v. Dev</u>, 2017 WL 117536, 2017 Cal. App. Unpub. LEXIS 220 (Cal. Ct. App. Jan. 12, 2017), reh'g denied

1

Feb. 3, 2017.  The California Supreme Court denied review on April 19, 2017.  See ECF No. 2 at 72.

On July 13, 2018, petitioner filed a petition for writ of habeas corpus in the Yolo County Superior Court (Case No. HCCR 18-29).  Four days later, on July 17, 2018, petitioner filed the instant federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, together with a motion for stay and abeyance, ECF No. 2.

The timeliness of the pending federal petition is determined by application of the Antiterrorism and Effective Death Penalty Act (AEDPA), specifically 28 U.S.C. § 2244(d)(1)(A) (one-year limitations period shall run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review").  "Direct review" includes the ninety-day period during which petitioner could have filed (but did not) a petition for writ of certiorari in the United States Supreme Court.  See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) ("We hold that the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition.").

Accordingly, petitioner had ninety days following the California Supreme Court's denial of direct review on April 19, 2017, or until July 18, 2017, to file a petition for writ of certiorari in the United States Supreme Court.  See Rule 13, Supreme Court Rules.  Because petitioner did not pursue this option, his convictions and sentence became final on July 18, 2017.  Bowen, 188 F.3d at 1157-58.  The one-year limitations period commenced the next day, on July 19, 2017.  See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (commencement of limitations period excludes last day of period for seeking direct review, by application of Fed. R. Civ. P. 6(a)).

As a result, absent statutory or equitable tolling, AEDPA's limitations period expired on July 18, 2018.  Petitioner's federal petition, filed one day before on July 17, 2018, was thus timely filed without the benefit of tolling.[1]

---

[1] Petitioner may be entitled to statutory tolling from July 13, 2018, the date he filed his petition (continued…)

The federal petition contains five claims, two of which were exhausted on direct review, and three of which are currently pending in state collateral proceedings. The claims that have been exhausted by presentation to the state courts on direct appeal are Claims Three and Four of the federal petition:

> <u>Claim Three</u>: The trial court's exclusion of translated Nepali court records, which impeached Sapna's testimony, violated petitioner's rights to a fair trial and to present a defense.
>
> <u>Claim Four</u>: The trial court's exclusion of email evidence, which showed Sapna lied at trial, violated petitioner's rights to a fair trial and present a defense.

Petitioner's three unexhausted claims, currently pending in the Yolo County Superior Court, are identified as follows in the federal petition:

> <u>Claim One</u>: Trial counsel provided ineffective assistance by failing to investigate and present eyewitness testimony, expert testimony, and properly authenticated documentary evidence that impeached Sapna's credibility, failing to present readily available evidence directly supporting petitioner's theory of the case and undermining the state's theory.
>
> <u>Claim Two</u>: Evidence not presented to the jury demonstrates petitioner's actual innocence and provides a permissible ground for habeas relief under <u>Herrera v. Collins</u>, 506 U.S. 390 (1993), and <u>Carriger v. Stewart</u>, 132 F.3d 463, 476 (9th Cir. 1997) (petitioner has burden of demonstrating he "is probably innocent" based on his new evidence, when measured against "the proof of petitioner's guilt at trial").
>
> <u>Claim Five</u>: Cumulative error.

Petitioner seeks a stay and abeyance of this action pursuant to <u>Rhines v. Weber</u>, 544 U.S. 269 (2005), so that he may exhaust Claims One, Two, and Five in the state courts.

III. <u>Legal Standards</u>

A <u>Rhines</u> stay permits a prisoner seeking state postconviction relief to avoid expiration of AEDPA's one-year statute of limitations while he exhausts additional claims in the state courts "by filing a 'protective' petition in federal court and asking the federal court to stay and abey the

---

for writ of habeas corpus in the Yolo County Superior Court. <u>See</u> 28 U.S.C. § 2244(d)(2) (according statutory tolling for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending").

federal habeas proceedings until state remedies are exhausted." Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005) (citing Rhines, 544 U.S. at 278). By preserving the federal filing date, this process enables a petitioner to timely seek federal relief on all of his claims in a "perfected petition." Rhines at 271.

Under Rhines, a district court may stay a "mixed" federal habeas petition containing both exhausted and unexhausted claims upon demonstration of the following "limited circumstances:" (1) there is "good cause" for petitioner's failure to previously exhaust her unexhausted claims in the state courts; (2) the unexhausted claims are potentially meritorious; and (3) petitioner has not engaged in intentionally dilatory litigation tactics. Rhines at 277-78.

IV. Analysis

A. "Mixed" Petition

The pending federal petition is indeed "mixed," that is, "a single petition containing some claims that have been exhausted in the state courts and some that have not." Rhines at 271.

B. Good Cause

The "good cause" requirement under Rhines does not require a showing of "extraordinary circumstances." Jackson v. Roe, 425 F.3d 654, 662 (9th Cir. 2005). Rather, "[t]he good cause element is the equitable component of the Rhines test. It ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court. As such, good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure." Blake v. Baker, 745 F.3d 977, 982 (9th Cir. 2014) (citing Pace, 544 U.S. at 416).

In the present case, petitioner contends that he did not previously exhaust his additional federal claims because he was awaiting the development of new evidence by current counsel, who was retained by petitioner's family in April 2017, after the conclusion of petitioner's direct review in the state courts. The new evidence was obtained by petitioner's counsel through investigation and witness interviews in Nepal. See ECF No. 2 at 9-10. International investigation was necessary because petitioner was convicted for sexual crimes against his adopted daughter, Sapna, who is petitioner's first cousin and was adopted from Nepal as a teenager by petitioner and

his wife. Petitioner has maintained his innocence throughout the underlying proceedings, and asserts that the new evidence supports his contention that Sapna fabricated the allegations against him. See ECF No. 1 at 2-7. Petitioner contends that the discovery of relevant new evidence, commencement of state collateral proceedings before bringing the instant motion to stay, and the limited time remaining in the federal limitations period, demonstrate good cause warranting a stay by this court.

The undersigned finds these arguments persuasive. Newly discovered evidence weighs in favor of finding good cause for the failure to earlier exhaust. See Roberts v. Harrison, 2006 WL 705934, at *1, 2006 U.S. Dist. LEXIS 16115, *2 (E.D. Cal. Mar. 17, 2006) (newly discovered evidence in the form of declarations from percipient witnesses). Commencing state collateral proceedings before seeking a stay in this court also weighs in favor of finding good cause for granting the stay. See Leonardos v. Buddress, 2007 WL 1174825, at *3, 2007 U.S. Dist. LEXIS 32411, at *8-9 (N.D. Cal. Apr. 19, 2007) (this process "decreases the chance of delay and frustration of the goals of AEDPA to encourage the finality of state court judgements and for petitioners to litigate claims in state court first"). Additionally, the short time remaining on the federal limitations period supports a finding of good cause for granting the requested stay. See Leonardos, 2007 WL 1174825, at *3, 2007 U.S. Dist. LEXIS 32411, at *7-8.[2]

---

[2] As the district court reasoned in Leonardos:

> Here, the state habeas petition was filed with two days left on the statute of limitations. A subsequent habeas petition before this Court will be time-barred if there is any short delay in notification from the California Supreme Court. Even with careful and diligent lawyering, a two-day window with notice from the state court notification system may not be enough time to file the federal habeas petition. Leonardos supports his position with a case from this district granting a stay, finding good cause when there was only 12 days left on the statute of limitations to file a federal habeas petition after the state habeas petition was exhausted Delongis v. Ollison, 2006 U.S. Dist. LEXIS 60732, *3 (N.D. Cal. 2006) (holding that good cause for a stay was met because "the window in which he has to file his federal petition is extremely narrow -- approximately twelve days -- and that absent a stay, any small delay in notification to petitioner may result in forfeiture of his rights under AEDPA.")

Leonardos, 2007 WL 1174825, at *3, 2007 U.S. Dist. LEXIS 32411, at *7-8.

In sum, the undersigned finds that the nearly-expired federal limitations period, protected by a state collateral proceeding, together with petitioner's newly discovered evidence, satisfy the Rhines "good cause" requirement.

### C. Potential Merit

The Ninth Circuit has articulated the following standard for assessing the potential merit of unexhausted claims in a Rhines motion:

> A federal habeas petitioner must establish that at least one of his unexhausted claims is not "plainly meritless" in order to obtain a stay under Rhines. 544 U.S. at 277. In determining whether a claim is "plainly meritless," principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless "it is perfectly clear that the petitioner has no hope of prevailing." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005). "A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." Id. (citing Rose v. Lundy, 455 U.S. 509, 515 (1982)).

Dixon, 847 F.3d at 722. The undersigned has assessed the potential merit of petitioner's unexhausted claims, and finds that at least one of them, petitioner's ineffective assistance claim (Claim One), is not "plainly meritless." Rhines, 544 U.S. at 277.

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

In Claim One, petitioner alleges that trial counsel performed unreasonably and prejudicially by failing to develop and present crucial credibility-related evidence. Petitioner emphasizes that the jury's assessment of his credibility and that of Sapna were central to the case:

> In defense counsel's words, there was only "one issue [in the case]. Has [the state] proven beyond a reasonable doubt that Sapna is telling the truth?" 18 RT 5066. The defense was that Sapna had a motive to and did make up the allegations. 18 RT 5117. The prosecutor agreed Sapna's credibility was key; in the prosecutor's words, "No

6

|   |   |
|---|---|
| 1 | Sapna, no case." 18 RT 5015. As the prosecutor correctly noted during closing arguments, for the jurors to acquit they would have to find "Sapna [was] . . . making all this up." 18 RT 5142. |
| 2 |  |

Petition, ECF No. 1 at 79. Petitioner contends that "the jurors deciding whether Sapna was 'making this all up' did not have the full story," because they heard none of the following evidence, id. at 79-80:

- The testimony of Sapna's first cousin, Sangita Dev, that in 2004 Sapna admitted making up the allegations because she was upset about how strict petitioner was as a parent, was afraid of having the adoption reversed and wanted to return to the United States. See Ex. C, Decl. of Sangita Dev.

- The testimony of Sapna's friend Dinesh Deo that Sapna admitted renewing the charges against petitioner because she was angry with him and wanted to return to the United States. See Ex. G, Decl. of Dinesh Deo.

- The testimony of headmaster Bhabendra Yadav that Sapna admitted the allegations against petitioner were not true; she made them out of anger over how strict a parent petitioner was and she renewed the charges because she believed petitioner was behind the passport fraud case in Nepal. See Ex. H, Decl. of Bhadendra Yadav.

- The testimony of Sapna's friend Ranjana Deo that Sapna was angry at petitioner because she thought he was behind the passport fraud case which had been brought against her and that "if she did not testify [against petitioner] there would be no way for her to return to the United States." See Ex. I, Decl. of Ranjano Deo.

- The testimony of Sapna's friend Shweta Deo that Sapna said she was "furious" with petitioner when he spoke with her boyfriend who then broke up with her, made up the allegations in order to find a way to stay in the United States, felt badly about the false allegations and so withdrew them but she later pursued them again because she believed petitioner was involved with her Nepali passport fraud case and she wanted to return to the United States. See Ex. J, Decl. of Shweta Deo.

- The testimony of a forensic expert that at 8:48 on the morning of September 26, 2003 – the precise time someone was accessing pornography at the petitioner's home – petitioner was at work sending an email to his wife who was at her work. See Ex. M, Decl. of Michael Mullen.

- Information about Sapna's Nepali convictions, and that she had lied about her birthdate. See Ex. X, Petition for Rehearing; Ex.Y, Denial of Rehearing.

- The accurate translation of the "pretext call' in which petitioner did not say, "But you had sex with me when you were 18," as translated by Sapna, but rather, "If that [is] so why did you come with me since

7

18 years?" See Ex. O, Decl. of Netra Daria.

- That the prosecutor's argument petitioner had confessed rape to his own lawyer was entirely false. See Ex. P, Decl. of Michael Rothschild.

Petitioner's trial counsel has submitted a declaration averring, inter alia, that the evidence obtained by current counsel from Sapna's friends and relatives in Nepal "is entirely consistent with and furthers the defense I presented at trial that Sapna was not credible. I did not make a tactical decision not to present this evidence. I was unaware of this evidence at the time of trial and had I been aware of it, I would have used it." Ex. P. Decl. of Michael Rothschild, ¶ 14. Current counsel states that "[t]he same is true with respect to counsel's failure to properly authenticate and introduce both the September 26 e-mail and the documents relating to the Nepali conviction. Both directly support the defense theory that Sapna was lying, albeit in different ways. . . . The same conclusion is warranted with respect to counsel's failure to obtain an expert enhancement of the pretext call." ECF No. 1 at 83, 84.

Petitioner contends that "[t]rial counsel's failure to present [this] readily available evidence directly supporting his own theory of the case and just as directly undercutting the state's theory" fell below an objective standard of reasonableness. ECF No. 1 at 82. Petitioner further argues that "defense counsel's failure to move to reopen the case to correct the prosecutor's false argument that petitioner admitted the Bangkok rape to his own lawyer also fell below an objective standard of care." Id. at 85. Petitioner specifically pleads prejudice: "Because all parties recognized Sapna's credibility was key to the case, counsel's failure to introduce evidence showing Sapna lied and undercutting state's case could have resulted in one or more jurors finding reasonable doubt and voting to acquit." Id. at 86.

Petitioner's allegations, which are supported by a substantial proffer of exculpatory evidence that was not presented at trial, establish a colorable claim of ineffective assistance of trial counsel under Strickland, 466 U.S. at 692, 694. Petitioner's unexhausted Claim One is not "plainly meritless." Rhines, 544 U.S. at 277; see also Dixon, 847 F.3d at 722 (unexhausted claim has "claim plausibility" if it is not "plainly meritless"). Accordingly, this factor weighs in favor of a stay. See Rhines at 278.

D. <u>Delay</u>

Finally, the Supreme Court has cautioned that "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." <u>Rhines</u>, 544 U.S. at 278. This court must therefore consider whether petitioner engaged in abusive litigation tactics or intentional delay before filing his state petition for collateral review and the instant federal petition.

Petitioner's family retained current counsel, Cliff Gardner, in April 2017. Gardner has filed a declaration explaining that he completed his review of the nearly 10,000-page trial record in late August or September 2017, and met with petitioner in October 2017. Gardner Decl., ECF No. 2 at 97 ¶ 2. In early November petitioner elected to pursue state and federal habeas proceedings. <u>Id.</u> at ¶ 3. Counsel avers that he "commenced investigating the case and have prepared petitioner's state and federal petitions within weeks of completing that investigation and learning the legal and factual bases for all the claims. A substantial portion of that investigation involved investigation and interviews in Nepal, since that is where the complaining witnesses in the case spent a great deal of time. Based on new evidence developed during the investigation, petitioner's state-court petition was filed on July 13, 2018." <u>Id.</u> at 97-8, ¶ 3.

This chronology reflects reasonable diligence. There was no delay between the conclusion of direct review and plaintiff's retention of habeas counsel, and no appearance of delay by counsel in commencing and pursuing the necessary case review and investigation. Counsel's timeline is entirely reasonable in light of the size of the record and the need to conduct interviews in Nepal. The undersigned finds no evidence of intentional delay or abusive litigation tactics. Petitioner's diligence in pursuing his claims supports a stay.

V. <u>Summary</u>

For the reasons explained above, the undersigned finds that petitioner has satisfied the requirements for stay and abeyance under <u>Rhines</u>. Specifically, petitioner has shown good cause for his failure to previously exhaust his new claims on collateral review in the state courts; at least one of petitioner's unexhausted claims is potentially meritorious; and petitioner has not engaged in intentionally dilatory litigation tactics. <u>Rhines</u>, 544 U.S. at 277-78. Based upon these findings,

the undersigned will recommend that petitioner's motion to stay and abey this action be granted.

VI. Conclusion

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court shall randomly assign a district judge to this action.

Further, IT IS HEREBY RECOMMENDED that:

1. Petitioner's motion to stay and abey this action under Rhines v. Weber, 544 U.S. 269 (2005), ECF No. 2, be GRANTED;

2. Petitioner be directed to file in this court, within thirty (30) days after the filing date of the California Supreme Court's final order resolving petitioner's unexhausted claims, a motion to lift the stay and a motion to file an amended petition for writ of habeas corpus, together with a proposed First Amended Petition; and

3. The Clerk of the Court be directed to administratively close this case for the duration of the stay.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 9, 2018

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE